CHARLES MOORE & another *vs.* GEORGE E. JACOBS & others.

Middlesex.   December 10, 1902. — January 8, 1903.

Present: KNOWLTON, C. J., MORTON, LATHROP, BARKER, & HAMMOND, JJ.

*Practice, Civil,* Construction of agreement as to issues for jury.

On the question what credits should be allowed to a respondent against whom a petitioner had established a mechanic's lien, it appeared, that six notes had been given by the respondent to the petitioner, that one of them had been paid by the respondent before the petition was filed, that the other notes had been

disposed of by the petitioner and at maturity had been renewed by the respondent, that upon one or two of these renewals payments had been made by the respondent, and that one of the renewal notes had been proved by the holder against the estate of the respondent in bankruptcy. The trial judge submitted to the jury six issues, one as to each of the notes, each consisting of the single question whether the petitioner accepted the note in payment or part payment of his claim. The parties agreed in writing, that all questions not submitted to the jury should be tried before the judge alone. The jury answered "No" to each of the six questions. The respondent then sought to raise the question as to each note and its renewals whether, if not originally given and received in part payment, it should not be credited to the respondent by reason of subsequent transactions. The judge refused to allow the question to be raised, and found for the petitioner for the full amount claimed. *Held,* that the ruling was erroneous; that the agreement of the parties fairly construed meant, that if the jury found on each issue for the respondent there would be no need of further inquiry, but if they found that the notes or some of them originally were not received in part payment then the question, whether there should be credits by reason of subsequent transactions, was left open to be dealt with by the judge.

PETITION, filed December 23, 1898, to establish a mechanic's lien for labor and materials furnished by the petitioners as plumbers upon certain buildings of the respondent Wildes.

Wildes was adjudicated a bankrupt in October, 1898, and the respondent Sprague was appointed his trustee in bankruptcy. When the case was reached for trial in the Superior Court the respondents were not present and were defaulted. A decree was entered April 6, 1899. On April 29, 1899, the decree was vacated and the default removed in accordance with the following agreement: " It is agreed: First. That the decree of sale may be vacated and the default taken off. Second. That the said Charles Moore *et al.* furnished the material and performed the labor as set forth in the petition and at the prices therein charged. Third. That this case may be sent to B. S. Ladd of Boston, to hear the parties as auditor, and determine what credits, if any, should be allowed against the amount for which the said Charles Moore *et al.* claimed their lien, the investigation to be confined to the questions of payments or credits."

The auditor having made his report, the case was tried before *Hardy,* J., in the manner stated in the opinion. The judge ruled as stated by the court, and found for the petitioner in the sum of $868.75 with costs. The respondents alleged exceptions.

*C. H. Sprague,* for the respondents.

*T. W. Proctor,* for the petitioners.

HAMMOND, J. After the vacation of the decree and the removal of the default in accordance with the agreement of April, 1899, the case stood for trial, but the defence had been narrowed. The respondents could no longer contest the amount due the petitioners except so far as they could show that the original sum charged was reduced by " payments or credits." Although the agreement is silent as to any other grounds of defence, still it is fair to assume that the only questions left open to the respondents were those respecting payments and credits. This ground of the defence, however, was fully opened to them. It is true that the question was referred in the first instance to an auditor, but it is to be noticed that he was to act only in that capacity. He was neither a referee nor an assessor. This reference was the ordinary step taken in a case involving an inquiry into accounts as a preliminary to the real trial before the court.

The auditor filed his report, in which he found that during the progress of the work various notes therein respectively designated as notes A, B, C, D, E and F were given by the respondent Wildes to the petitioners, upon the lien account ; and he " applied them as payments thereon, although he did not find that there was any agreement that they should be payment." He further detailed quite minutely the history of these notes, in which it appeared that at the time the petition was filed note C had been paid by Wildes, that the other notes had been disposed of by the petitioners and at maturity had been renewed by Wildes, and that upon one or two of these renewals payments had been made by him ; that all of the outstanding notes were in the hands of parties other than the petitioners, and that one of the renewal notes had been proved by the holder against the estates of Wildes in bankruptcy. The auditor having filed his report, the case stood for hearing by the court upon the questions arising thereon, being those as to payments and credits.

At this stage of the case, it was discretionary with the judge either to hear and settle the case without the aid of a jury, or to frame certain issues for trial by jury. Upon the motion of the petitioners against whom the auditor had found, and against the objection of the respondents, the judge concluded to adopt the latter course.

Manifestly two questions were raised upon the facts found by the auditor, namely, (1) whether the six original notes all or either of them were received and accepted by the petitioners in payment or part payment of their claim in suit, and (2) whether, if not so received and accepted, the subsequent connection of the petitioners with the disposition and renewals of the same or any of them, and especially with the payment of note C by Wildes, was such that the amount of these notes or any of them should be credited on the account.

With these questions remaining for solution, the judge framed six issues for the jury, one as to each of the six original notes. The first question was as follows: "Did the petitioners receive and accept in payment or part payment of their claim in suit the note of George D. Wildes, designated by the auditor's report as note A, dated September 18, 1897, for $200?" Precisely the same question was put with reference to each of the other original notes. At the time these issues were framed, the parties filed a written agreement that the auditor's report should be considered evidence and might be read to the jury, and that all other questions except those submitted to the jury should be tried before the judge alone. The jury answered "No" to each of the six questions; and a motion to set aside the verdict was overruled.

Subsequently the case came on to be further heard before the judge without a jury. The auditor's report was read by the petitioners, and upon that report and the agreement vacating the decree, and upon the findings of the jury, they rested. There was no other evidence.

The respondents then presented several requests for rulings. Without repeating those requests in detail, it is sufficient to say that they sought thereby to raise the question as to each of the original notes and the renewals thereof, whether, even if it was not originally given and received absolutely in part payment of their claim, still, by reason of the connection of the petitioners with its subsequent history, it should be credited on the account. The judge, however, declined to rule as requested, upon the ground, as stated by him, that the jury had "determined the issue of credits or payments which was the only question for adjudication under the agreement vacating decree of April 6,

1899," and found for the petitioners for the full amount claimed. To this the respondents excepted.

In support of the ruling of the judge, it is urged by the petitioners that, inasmuch as the evidence at the jury trial is not before us, we cannot say that it might not have been such as to warrant the jury in finding that neither of the original notes had any relation whatever to the account in dispute, that they were all given under some kind of a collateral arrangement for the accommodation of the respondents, which neither satisfied nor suspended the lien, but left the petitioners' right intact. See *McLean* v. *Wiley*, 176 Mass. 233. It must be conceded that this is theoretically possible, but it does not seem to us to be a fair inference from the record. We do not understand that the petitioners contend that they had any account with the respondents other than the one in suit, or that there was any other obligation on the part of the latter to give notes to them except that arising out of this contract. It is also to be noted that the only questions left open after the agreement of April, 1899, were those relating to payments or credits; that the issue submitted to the jury related only to the six original notes, and were in substance whether they had been given and received in payment. The questions manifestly had reference to the original intention with which the notes were given and received, and required no examination as to the subsequent transactions except so far as they tended to throw light upon that intention. It is to be further noted that by the terms of the agreement made at the time the issues were framed, all other questions except those put to the jury should be subsequently tried by the judge; and that there were no disputed questions still unsettled except those of payments or credits.

In view of the limited nature of the language in which the issues for the jury are couched, and the provision of the agreement that the other questions should be tried by the judge, it seems to us that the fair interpretation of the proceedings is that the question between the parties with reference to these original notes was whether they were given and received as part payment of the claim at the time they passed to the petitioners, or whether they were only to be credited upon the account when, either by their payment or otherwise, the petitioners had

received the benefit of them; and that the first question was to be submitted to the jury. If their finding should be for the respondents, then there would be no need for further inquiry. If, on the other hand, they should find that the notes or some of them were not originally received in part payment, then the question would remain, whether by reason of the subsequent transactions, including the payment of note C and the part payment of some others and the renewals, the petitioners had so far received the benefit as that some credit therefor should be given upon the account.

We are of opinion that this last question was not covered by the issues to the jury, but was left open to be dealt with by the judge if necessary, and that the ruling of the judge to the contrary was erroneous.

*Exceptions sustained.*